No. 27,694.

R. R. RICHARDSON, *Appellee*, v. THE INTERSTATE BUSINESS MEN'S
ACCIDENT ASSOCIATION, *Appellant*.

(261 Pac. 565.)

SYLLABUS BY THE COURT.

1. HEALTH INSURANCE—*Construction of Policy—Non-house-confinement Illness.*
   In a health insurance policy which provides in unambiguous terms for dif-
   ferent indemnity for house-confinement illness and non-house-confinement
   illness, and the insured was not in fact confined to the house, the case of
   *Sheets v. Life Insurance Co.*, 116 Kan. 356, 225 Pac. 929, followed, and *held,*
   that the plain, ordinary, usual and unmistakable meaning of the language
   used in the contract should control.

2. SAME—*Construction of Policy—Indemnity Should Be Under Provision Most
   Nearly Applicable.* Where one of the paragraphs in a health insurance policy
   provides an indemnity for the insured while he "shall be continuously con-
   fined within the house" and another paragraph while he "shall not be con-
   fined to the house but shall be compelled to refrain from performing every
   act of business," the indemnity of the insured should be under that provision
   to which the facts most nearly apply.

Health Insurance, 29 C. J. pp. 280 n. 36, 282 n. 61 new. Insurance, 32 C. J.
pp. 1148 n. 33, 1152 n. 95; 14 R. C. L. 925.

3. SAME — *Construction of Policy — What Constitutes Non-house-confinement Illness.* Where the insured under a health insurance policy went or was taken a distance of a half mile or more to visit his physician almost daily, he is not entitled to recover under the house-confinement clause when he has the protection in the same policy of a non-house-confinement provision which more nearly fits the facts in the case.

4. SAME — *Construction of Policy — What Constitutes Non-house-confinement Illness.* Under the two provisions of the health policy as above outlined, it is not a question of whether or not the insured "was able by *his own efforts* to leave the house from time to time for consultation with his physician," but rather only a question of whether he did in fact leave the house more or less frequently.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed December 10, 1927. Affirmed in part and reversed in part.

*Z. Wetmore, Fred Hinkle* and *George M. Ashford,* all of Wichita, for the appellant.

*George McGill, H. C. Castor* and *Victor J. Rogers,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff sued the defendant insurance company to recover upon a health insurance policy for the period he was wholly disabled to perform his usual duties by reason of barber's itch. After a trial by jury he was given a judgment for $330, from which the insurance company appeals.

In his bill of particulars plaintiff claims $650 for house-confinement, twenty-eight weeks at $25 a week, $190 for non-house-confinement, 19 weeks at $10 a week, and $100 for hospital indemnity. The abstract and briefs do not disclose the component parts of the verdict or whether it contains an allowance for hospital indemnity. If it does, that part of the verdict is not reviewed, the main controversy being whether the insured is entitled under the facts in the case to recover under the house-confinement provision of his policy. The insurance company demurred to the evidence of the insured, and when the demurrer was overruled rested without introducing any evidence. The jury found specially that the insured was under the care of a physician from June 3, 1925, to September 1, 1925, and was compelled to refrain from performing every act of business for ten weeks from June 20, 1925, to August 28, 1925.

The evidence shows that the insured was a farmer living just north of the town of Mulvane about a half mile from the physician's

office; that the physician never called on him at his home, but the insured went regularly to see the physician every other day at first, and later every day; that he was driven to the physician's office by his brother or his hired man mostly, but a few times drove the car himself; that he regularly went out of the house to the toilet; that otherwise he remained in the house until about September 1, 1925.

The two provisions of the insurance policy under which recovery is sought—the house- and non-house-confinement provisions—are as follows:

"If as a result of such disease the insured shall be continuously confined within the house under the constant treatment of a regular physician, the association will pay for a period not exceeding thirty weeks, that such disease shall compel the insured to be so confined and treated, a weekly indemnity of $25. . . .

"If as a result of such disease the insured shall not be confined to the house, but shall be compelled to refrain from performing every act of business, and be under the constant treatment of a regular physician, the association will pay for a period not exceeding eight weeks, a weekly indemnity of $10."

This court has had this identical question before it, and has decided that when parties contract as to recovery of different amounts, depending upon house-confinement and non-house-confinement, "the court is not warranted in ignoring or eliminating an unambiguous provision included by the parties in their contract." (Sheets v. Life Insurance Co., 116 Kan. 356, 358, 225 Pac. 929.) The syllabus of this decision is as follows:

"A health insurance policy which stipulates for full indemnity for a disabling sickness for a period during which the insured is necessarily and continuously confined to the house, and a lower specified rate for such a sickness when he is not so confined, does not warrant the payment of full indemnity for the time the insured is able to leave the house and make visits to his physician.

"Under such a contract mere disability of the insured to work or pursue his ordinary avocation does not entitle him to the higher rate, but to recover full indemnity the degree of his disabling sickness must be such as to confine him to the house."

In the above-cited case the insured was sometimes confined to the house or hospital for a few days during and after an operation, but in the case at bar he was never so confined. In that case the word "continuously" had to be construed. Not so here. We are aware there is a lack of uniformity upon this question, some of the courts holding in favor of a more liberal construction of the term "house-

confinement"; but, as stated in the above quotation from the opinion in the Sheets case, we are at a loss to know why a liberal construction is warranted when there is no possible ambiguity in the meaning of the words used. If there were any ambiguity the liberal construction would be justified against the company, which undoubtedly constructed the phrase. (*Hoskins v. North American Accident Ins. Co.*, 123 Kan. 731, 256 Pac. 981.) Could there be any language framed more nearly to cover and fit the facts in this case than that of the non-house-confinement clause above quoted? If it fits exactly under that clause, how can it be construed to fit under the former clause, which is substantially the opposite with reference to house-confinement? In reading the opinions of some of the cases cited by appellee and other similar cases we observe the reasoning is often based upon the disabling feature of the illness, and the conclusion is supported because of such disability. If disability to perform the usual avocation was to be the ground for the payment of the indemnity, nothing could have been easier than to have so stated in the contract or policy. In the case at bar nothing whatever is said in this part of the contract about disability, the only question being whether or not the insured was confined to the house. We think he was not. Of course there are other features in this provision, such as being under the constant treatment of a regular physician and the confinement being the result of the disease, but these points are not here controverted. We adhere to and follow the decision in the Sheets case.

Three other points are argued in the briefs: First, failure to give required notice of the sickness within ten days; second, the right of the company to apportion with other insurance companies when insurance is carried in them without notice to the defendant company; and, third, error in the language of instruction No. 5, defining confinement to house as depending upon whether or not the plaintiff was able by his own efforts to leave the house. A reference to section 4 of the policy requiring notice to be given it of the sickness, shows it must be given within ten days after the commencement of disability. The evidence shows the insured worked in his harvest until June 20, although he was sick before that time. He sent the notice June 30.

As to section 17 of the policy, requiring notice to be given the company if other insurance is carried we would hesitate to con-

clude, as contended by appellee, that notice after the illness was that which was intended, but, aside from the natural conclusion that this is usually a matter of defense, the jury has disposed of this issue by a special finding to the effect that they had no information as to whether plaintiff carried insurance covering the same loss with any other company, corporation or society.

With reference to the third point, as to the instruction making house-confinement depend upon whether or not defendant was able with his own efforts to leave the house, what has heretofore been said in this opinion as to house-confinement being an unambiguous term and needing no special definition will dispose of that question. We think it is a question of fact easily applied and readily comprehended without qualification; not forgetting, however, extreme exceptions as mentioned in the Sheets case like the burning of a dwelling on order of the board of health.

We conclude that the insured is not entitled to recover anything under the house-confinement provision of the policy, but is entitled to recover the full amount under the non-house-confinement provision, or eighty dollars for eight weeks at ten dollars per week; and if any allowance for hospital indemnity was included in the judgment and was within the limits of the policy, such allowance is approved.

The judgment is reversed in part and affirmed in part, and the cause is remanded with direction to render judgment for the insured in accordance with the views herein expressed.